IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SKINNER CAPITAL LLC, d/b/a          §
TEXAS ADVANCEMENT CENTER,           §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §        Civil Action No. 3:23-CV-2320-D
                                    §
ARBOR E&T, LLC, d/b/a               §
EQUUS WORKFORCE SOLUTIONS,          §
                                    §
            Defendant.              §

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Skinner Capital, LLC d/b/a Texas Advancement Center ("TAC") moves to file a first amended petition ("amended complaint")[1] and add five non-diverse defendants whose joinder would destroy diversity jurisdiction. TAC also objects to, and moves under Fed. R. Civ. P. 12(f) to strike, part of the response of defendant Arbor E&T, LLC d/b/a Equus Workforce Solutions ("Equus") to TAC's motion. For the reasons that follow, the court denies both motions.

I

TAC brings this action against Equus, asserting claims arising out of an alleged failure to pay invoices for educational services rendered. TAC is a trade school that serves high school students and adults facing employment challenges in North Texas. Equus is a private

---

[1] The "motion to file an amended complaint" is referred to in the briefs as a "motion for leave to file first amended petition."

provider of workforce services that facilitates student selection of an agency-approved training provider, serves as a liaison between students and training providers, and pays tuition invoices. The Texas Workforce Commission ("TWC") indirectly links TAC and Equus as the state agency that oversees workforce development services and regulates the licensing of trade schools. TWC also provides federal funding to local development boards, like the Dallas County Local Workforce Development Board, Inc. ("Dallas Board"), which ultimately distribute funds to approved training providers.

It is alleged in this case that the Dallas Board entered into a contract with Equus under which it reimbursed Equus for qualified student tuition paid to TWC-approved training providers. TWC approved TAC in June 2020, approximately 2½ years before Equus allegedly stopped paying TAC's tuition invoices in early 2023. Equus contends that it stopped paying invoices after learning that TWC was investigating TAC for alleged wrongful conduct. The investigation was initiated based on a complaint against TAC filed by Daphne Bennett ("Bennett") on February 6, 2023.[2]

After an attempted settlement in July 2023, TAC brought suit in state court against Equus on August 29, 2023 for an alleged failure to pay tuition invoices worth approximately $436,765.00. TAC's state-court petition included claims for breach of contract, money had and received, unjust enrichment, promissory estoppel, conversion of property, suit on a sworn account, and fraud. Equus removed the suit to this court on October 20, 2023 based

---

[2]TAC appealed the results of the investigation, and the TWC appeal board was scheduled to hear the matter on February 22, 2024.

on diversity of citizenship.  TAC is a Texas citizen, and defendant is a citizen of Kentucky and Michigan.[3]

On November 20, 2023 TAC moved for leave to file an amended complaint to add five additional defendants ("Proposed Defendants").  The Proposed Defendants include the Dallas Board; individual board members Laurie Larrea, Carter Holston, and Clay Jenkins ("Board Members"); and Bennett, a former TAC student.  TAC has not included party information about Bennett or asserted claims against her in the amended complaint; instead, TAC lists her name in the introduction.  The remaining Proposed Defendants are Texas citizens whose joinder would require that the case be remanded.  TAC asserts against the Dallas Board and Board Members the same claims as it alleges in the original petition, and it has added a claim of constructive fraud.  In the motion to file an amended complaint, TAC alleges that the Proposed Defendants were involved with, or endorsed, Equus' refusal to pay the outstanding invoices.  Equus opposes TAC's motion to file an amended complaint.

On January 10, 2024 TAC objected to, and moved to strike, an assertion in Equus' response that TAC defrauded multiple entities and individuals.  Equus opposes TAC's motion to strike.

The court is deciding these motions on the briefs, without oral argument.

---

[3]Equus' citizenship is based on the citizenship of APM Equus Holdings, a Kentucky corporation whose principal place of business is in Michigan.

II

The court turns first to TAC's motion to file an amended complaint and add the non-diverse Proposed Defendants whose joinder would require remanding the case.

A

"When a plaintiff seeks to join a non-diverse defendant after a case is removed based on diversity, 28 U.S.C. § 1447(e) gives the court the discretion to deny joinder or permit it and remand the case to state court." *Alba v. S. Farm Bureau Cas. Ins. Co.*, 2008 WL 4287786, at *1 (N.D. Tex. Sept. 19, 2008) (Fitzwater, C.J.) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). "[T]he diverse defendant has an interest in retaining the federal forum." *Hensgens*, 833 F.2d at 1182. The court must therefore balance the original defendant's interest in maintaining a federal forum with the competing interest in avoiding potentially parallel litigation. *Cannon v. Hartford Ins. Co. of the Midwest*, 1997 WL 760500, at *1 (N.D. Tex. Nov. 19, 1997) (Fitzwater, J.). In determining whether to allow a non-diverse party to be joined after removal, the court considers four factors: (1) whether plaintiff's purpose is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Hensgens*, 833 F.2d at 1182.

1

The court first considers TAC's purpose in seeking to add the Proposed Defendants. Courts addressing this factor assess, *inter alia*, "the viability of the claims alleged against a

- 4 -

new defendant, the timing of a plaintiff's attempt to add the defendant, and whether the plaintiff knew or should have known the identity of the new defendant prior to removal." *Appliance All., LLC v. Sears Home Appliance Showrooms, LLC*, 2015 WL 9319179, at *5 (N.D. Tex. Dec. 23, 2015) (Lynn, J.) (citation omitted).

TAC contends that the Proposed Defendants are "extensions of or somehow connected to [TWC]," which is the "nexus between [p]laintiff's school, [TAC], and the [d]efendant . . . ." P. Mot. to Am. Compl. (ECF No. 10) at ¶¶ 12-13.   TAC points out that it did not include the Proposed Defendants in the original state-court petition because the degree of their responsibility did not become clear until after TAC received a letter from TWC on October 30, 2023 ("Penalty Letter").   The Penalty Letter was a "Notice of Complaint Determination and Administrative Penalty" in response to Bennett's complaint against TAC and TWC's subsequent investigation.   According to TAC, the Penalty Letter "provided more insight into the [Dallas Board] and TWC's connection with Equus, and involvement and/or endorsement of Equus' refusal to pay Plaintiff . . . ." P. Mot. to Am. Compl. (ECF No. 10) at ¶ 15.   TAC also asserts that all its claims against the Proposed Defendants are in fact valid.

Equus counters that, rather than pleading facts or asserting viable claims against the Proposed Defendants, TAC has "merely added the names of these defendants to its Original Petition and relabeled it 'First Amended Petition.'"   D. Resp. (ECF No. 14) at 9.   Although TAC contends that it did not learn of the Proposed Defendants' involvement until receiving the Penalty Letter, Equus asserts that the letter does not mention the Proposed Defendants and discusses only TAC's wrongdoing.   Equus also points out that, when TAC filed its

original state-court petition, TAC knew that Bennett had submitted a complaint to the TWC.

The court finds that this factor weighs against granting TAC's motion to file an amended complaint. Suspicion exists "if the plaintiff knew of the non[-]diverse defendant from the outset and chose to exclude him from the original pleading." *Appliance All.*, 2015 WL 9319179, at *6 (alteration in original) (quoting *Andrews Restoration, Inc. v. Nat'l Freight, Inc.*, 2015 WL 4629681, at *4 (N.D. Tex. Aug. 4, 2015) (Lynn, J.)). Based on the July 14, 2023 settlement communication, TAC knew the following before filing the original state-court petition: (1) Bennett had submitted a TWC complaint against TAC; (2) TWC had notified Equus of its TAC investigation; and (3) TWC had contended that it did not tell Equus to halt payments. Given that Bennett's identity and involvement were known before the original state-court petition was filed, TAC's explanation does not overcome the suspicion that its purpose in seeking to add Bennett as a Proposed Defendant is to defeat diversity jurisdiction.

TAC's director avers that "[i]t was not until October 30, 2023, when I received a letter from the [TWC] that I discovered that TWC and Equus had agreed that Equus would not pay . . . ." P. Mot. to Am. Compl. (ECF No. 10) Ex. C, at 1-2. Yet there is no apparent reason from a reading of the Penalty Letter for TAC to infer that TWC and Equus had agreed that Equus would halt payments. The Penalty Letter solely communicates the results of the investigation and subsequent actions required by TAC; it does not even mention the Dallas Board or Board Members. The Penalty Letter does refer to TWC as the leader of the investigation, but, notably, TAC does not include TWC as a Proposed Defendant in the

- 6 -

instant motion.  In view of TAC's prior knowledge and the Penalty Letter's lack of information about the Proposed Defendants, it is not apparent how the Penalty Letter could have revealed previously unknown viable claims against the Proposed Defendants.  The court therefore holds that the first factor supports denying TAC's motion to file an amended complaint.

2

The court next considers whether TAC has been dilatory in seeking amendment.  This factor requires a case-by-case inquiry.  "There is no set timetable for when the timing of a proposed amendment reflects dilatoriness."  *Appliance All.*, 2015 WL 9319179, at *6 (comparing cases).  If significant activity beyond the pleading stage has not yet occurred, courts often find that amendment is timely, unless the plaintiff "had ample information about [the proposed defendant's] identity and involvement in [the underlying controversy] before [plaintiff] filed the suit in state court."  *Estate of Alex ex rel. Coker v. T-Mobile US, Inc.*, 2018 WL 993784, at *2 (N.D. Tex. Feb. 21, 2018) (Lynn, C.J.) (alterations in original) (quoting *Gallegos v. Safeco Ins. Co. of Ind.*, 2009 WL 4730570, at *4 (S.D. Tex. Dec. 7, 2009)).  And if the only "credible reason for waiting until after removal" to seek amendment is to defeat diversity jurisdiction, courts are likely to find that plaintiffs have been dilatory.  *Varela v. Home Depot U.S.A., Inc.*, 2019 WL 1041335, at *4 (N.D. Tex. Mar. 4, 2019) (McBryde, J.) (citation omitted).

The court finds that TAC has been dilatory in seeking leave to amend.  TAC filed the original state-court petition on August 29, 2023, and Equus removed the case to this court

- 7 -

on October 20, 2023.  TAC filed the November 20, 2023 motion to file an amended complaint fewer than 90 days after filing suit originally and approximately 30 days after removal.  Although at the parties' joint request the entry of a scheduling order has been deferred until the court decides the motion to file an amended complaint, TAC has not offered a credible reason for waiting until after removal to add the Proposed Defendants. Notably, Bennett's identity and involvement in the controversy were known to TAC when the original state-court petition was filed.  As discussed above, it is not apparent that receiving the Penalty Letter on October 30, 2023 enlightened TAC as to new claims against the Proposed Defendants.  Given that the Penalty Letter does not provide information that reveals new viable claims, the court finds that the delay in moving to add the Proposed Defendants was dilatory.  The court therefore holds that the second factor supports denying TAC's motion to file an amended complaint.

3

Concerning the third factor, TAC does not cite any significant injury that it would suffer if the motion to file an amended complaint is denied, nor does the court discern any. The court recognizes that TAC is facing large financial challenges from the alleged payment failure and would be required to file a separate lawsuit, likely in state court due to the lack of complete diversity of citizenship, to pursue its claims against the Proposed Defendants. But "[t]he mere potential for parallel litigation . . . is not grounds for granting the amendment; the party must show that it will be *significantly* injured if the court denies joinder." *Andrews Restoration*, 2015 WL 4629681, at *6 (emphasis in original) (citing *Alba*,

2008 WL 4287786, at *2). "Although [plaintiff] may be forced to litigate [its] action against [the Proposed Defendants] in state court, which would entail parallel litigation that would involve inefficiency and additional expense, this cost is insufficient to demonstrate that [plaintiff] will be *significantly* injured." *Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *3 (emphasis in original) (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) (citing *Anaya v. Schindler Elevator Corp.*, 2011 WL 1807786, at *3 (N.D. Tex. May 12, 2011) (Fitzwater, C.J.) (noting that denying motion to join did not deprive plaintiff of all of her remedies against non-diverse potential defendant)).

TAC contends that Equus would be unable to satisfy a judgment. Asserting that Equus stopped paying invoices in 2023 and that it is in default with other schools, TAC questions Equus' financial status. TAC also asserts that Equus must pay a multi-million-dollar settlement from another action, thereby risking its ability to pay a judgment. Although the court acknowledges these allegations, even if it accepts them as true, granting leave to join the Proposed Defendants would undermine Equus' interest in maintaining a federal forum, and this interest outweighs any injury that TAC may have from pursuing its lawsuit against the Proposed Defendants in state court. *See id.* (concluding that diverse defendant's interest in maintaining federal forum outweighed plaintiff's interest in avoiding parallel litigation)). The court concludes that the third factor supports denying TAC's motion to file an amended complaint.

- 9 -

4

The court analyzes under the fourth factor whether any other considerations bear on the equities. This factor allows courts to "address any 'unique circumstances presented' by the parties" in "weigh[ing] the plaintiff's overarching interest in avoiding parallel litigation, with the defendant's desire to pursue the case in federal court." *Andrews Restoration*, 2015 WL 4629681, at *7 (first excerpt quoting *Bonilla v. Am.'s Servicing Co.*, 2011 WL 3882280, at *5 (S.D. Tex. Sept. 2, 2011); second excerpt citing *Hensgens*, 833 F.2d at 1182). The court holds that there are no unique equitable interests to consider here. This factor is therefore neutral.

B

Considering all of the *Hensgens* factors, the court concludes that they weigh against allowing TAC to amend its complaint for purposes of adding the Proposed Defendants. Accordingly, the court denies TAC's motion to file an amended complaint.

III

The court now considers TAC's motion to strike under Rule 12(f).

A

TAC maintains that the statement in Equus' response that "[p]laintiff defrauded businesses, entities and tax payers" is scandalous and not factual. P. Mot. to Strike (ECF No. 20) at ¶ 10. Asserting that it has not been found to have committed fraud in any jurisdiction, TAC says that the statement "improperly casts a derogatory light" and, if not stricken, would negatively prejudice the factfinder against TAC. *Id.* Equus subsequently contends that its

- 10 -

response to TAC's motion to file an amended complaint does not qualify as a pleading under Rule 12(f) and that the statement at issue is directly related to this controversy.

## B

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at \*2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (quoting *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)).

Moreover, although Rule 12(f) authorizes the court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," *id.* (emphasis added), it only applies to pleadings. *See, e.g., NexBank, SSB v. Bank Midwest, N.A.*, 2012 WL 4321750, at \*2 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.) (denying plaintiff's motion to strike defendant's notice of removal because, *inter alia*, a notice of removal is not a pleading); *Groden v. Allen*, 2009 WL 1437834, at \*3 (N.D. Tex. May 22, 2009) (Fitzwater, C.J.) (holding that Rule 12(f) "does not permit the Court to strike motions or matters within them because the rule applies only to pleadings" (citing *Shah v. Chertoff*, 2007 WL 2948362, at \*5 (N.D. Tex. Oct. 10, 2007) (Ramirez, J.))); *cf. United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (assuming, without deciding, that Rule 12(f) can

be used to strike summary judgment filings). Rule 7(a) provides a list of permitted "pleadings" that determines what constitutes a pleading that is subject to being stricken under Rule 12(f). Rule 7(a) limits the universe of allowed "pleadings" to "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Moreover, Rule 12(f) motions "are viewed with disfavor" and should be granted "only when the pleading to be stricken has no possible relation to the controversy." *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 645 (N.D. Tex 2007) (Ramirez, J.) (citation omitted), *rec. adopted*, 500 F.Supp.2d at 624 (N.D. Tex. 2007) (Lynn, J.).

In moving to strike part of Equus' response to TAC's motion to file an amended complaint, TAC does not seek to strike matters from a pleading within the meaning of Rule 12(f), and the statement that it seeks to strike—even if construed as part of a pleading—has a definite relation to this case. The alleged defrauding stems from the results of the TWC investigation, which is pertinent to the underlying lawsuit because one of TAC's core arguments is based on the investigation Penalty Letter. Accordingly, because TAC is not entitled under Rule 12(f) to strike Equus' response or any portion thereof, the court denies the motion to strike.

- 12 -

\* \* \*

For the reasons explained, the court denies both TAC's motion to file an amended complaint and motion to strike.

**SO ORDERED**.

March 21, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE